**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Decided: February 22, 2017

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Gina M. Serra, Esquire
Jeremy J. Riley, Esquire
Rigrodsky & Long, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

Peter B. Andrews, Esquire
Craig J. Springer, Esquire
David M. Sborz, Esquire
Andrews & Springer LLC
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE 19807

RE:   *In re CytRx Corporation Stockholder Derivative Litigation II*,
      Civil Action No. 11800-VCMR

Dear Counsel:

This letter resolves plaintiffs' motions for appointment of a lead plaintiff and lead counsel. For the reasons described herein, plaintiffs Gordon Niedermayer and Brent Reed (collectively, the "Niedermayer Plaintiffs") are appointed as lead plaintiffs and Andrews & Springer LLC and Gainey McKenna & Egleston are appointed as lead co-counsel. The motion filed by plaintiff Jack Taylor is denied.

## I.     BACKGROUND

### A.     Facts

The facts underlying this case are well known. On March 13, 2014, Richard Pearson, a contributor on the website *Seeking Alpha*, published an article titled,

"Behind the Scenes with Dream Team, CytRx and Galena," in which he detailed how he went undercover after The Dream Team ("Dream Team") solicited him to write favorable articles on behalf of CytRx Corporation ("CytRx" or the "Company") without disclosing payment, how Dream Team's articles coincided with the company's disclosures and stock offerings, and how CytRx's stock price responded. Pearson stated that his goal was "to determine how involved management from these two companies were [sic] in this undisclosed paid promotion scheme."[1] With respect to CytRx, Pearson concluded that members of management at CytRx, including President and Chief Executive Officer Steven A. Kriegsman and Vice President for Business Development David J. Haen, were "intimately involved in reviewing and editing the paid articles"[2] on CytRx stock.

Before any litigation stemming from the Pearson report began, CytRx adopted a forum selection bylaw. The bylaw states as follows:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation, (ii) any action asserting a claim for breach

---

[1] Richard Pearson, *Behind the Scenes with Dream Team, CytRx and Galena*, SEEKING ALPHA (Mar. 13, 2014), http://seekingalpha.com/article/2086173-behind-the-scenes-with-dream-team-cytrx-and-galena.

[2] *Id.*

of fiduciary duty owed by any director, officer, employee, or agent of the corporation to the corporation or the corporation's stockholders . . . .[3]

## B.    Procedural History

Following publication of Pearson's article, multiple lawsuits were filed in Delaware and California alleging *Caremark*[4] claims, federal securities law claims, and challenges to certain spring-loaded options. Vice Chancellor Laster approved a final settlement of the spring-loaded options claims in this Court on November 10, 2015 (the "First Delaware Action"). That settlement excluded claims related to the Dream Team allegations. The United States District Court for the Central District of California approved a final settlement of the federal securities law claims on May 18, 2016 (the "Federal Securities Action"). The *Caremark* claims related to the Dream Team allegations remain unresolved and are the focus of this case.

On June 24, 2014, Niedermayer submitted a Section 220 demand to CytRx. On July 1, 2014, the Company responded, requesting proof of Niedermayer's stock holdings in CytRx during the time period in question. On July 29, 2014, Niedermayer sent CytRx unsworn internet printouts purporting to show his stock

---

[3]     Taylor's Opening Br. 12 (quoting Restated Bylaws of CytRx art. VIII).

[4]     *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).

holdings. The Company replied that such printouts were deficient on August 5, 2014.

On August 14, 2014, the first *Caremark* claim arising from the Dream Team allegations was filed in the Central District of California. Taylor filed his complaint in the Central District of California the next day on August 15, 2014. Those actions were consolidated on October 8, 2014 (the "California Derivative Action").

On December 16, 2014, Niedermayer, in another attempt to prove his stock holdings, sent CytRx an unsworn printout of a brokerage statement. Three days later, on December 19, 2014, CytRx acknowledged receipt of the brokerage statement, sent Niedermayer a proposed confidentiality agreement, and requested that Niedermayer make the required Section 220 representations under oath.

On December 20, 2014, the defendants moved to dismiss the California Derivative Action. In February 2015, the parties to the Federal Securities Action, the First Delaware Action, and the California Derivative Action began settlement discussions and agreed to a mediator. On April 6, 2015, Taylor sent the California Derivative Action defendants a settlement statement, and on April 15, 2015, the California Derivative Action parties submitted mediation statements to the mediator. Mediation occurred in the First Delaware Action, the Federal Securities Action, and the California Derivative Action on April 23 and 24, 2015.

On June 24, 2015, the judge in the California Derivative Action, among other things, denied defendants' rule 12(b)(3) motion to dismiss for improper venue, but granted leave to file a motion to dismiss for *forum non conveniens* based on the CytRx forum selection bylaw. Defendants filed such a motion on July 24, 2015.

On September 14, 2015, Reed sent a Section 220 demand to CytRx. Four days later, on September 18, 2015, Niedermayer returned the signed confidentiality agreement and sworn representation that CytRx had requested nine months earlier. On September 23, 2015, the Company acknowledged receipt of Niedermayer and Reed's letters and indicated that it was preparing the Section 220 documents. CytRx delivered the documents to the Niedermayer Plaintiffs between October 16 and 23, 2015.

On October 30, 2015, the judge in the California Derivative Action granted the defendants' motion to dismiss for *forum non conveniens* based on the CytRx forum selection bylaw. Taylor filed a notice of appeal of that decision in the United States Circuit Court of Appeals for the Ninth Circuit on November 17, 2015.

On December 14, 2015, the Niedermayer Plaintiffs commenced this case by filing a verified stockholder derivative complaint in this Court.

On December 23, 2015, the parties to the California Derivative Action entered a memorandum of understanding ("MOU") documenting an agreement in principal

that had been reached in late November. CytRx consented in writing in the MOU to the Central District of California as an alternative forum to the Court of Chancery for purposes of settlement. The parties stipulated to dismissal of the Ninth Circuit appeal without prejudice to reinstate the appeal, which the Ninth Circuit granted on February 19, 2016.

On February 25, 2016, the individual defendants in this case filed a motion to dismiss the Niedermayer Plaintiffs' complaint in this Court. In the alternative, they moved to stay pending approval of the settlement of the California Derivative Action.

On March 22, 2016, the Niedermayer Plaintiffs filed an amended complaint in this Court, but on May 2, 2016, this Court granted defendants' motion to stay this case in favor of the California Derivative Action. The Niedermayer Plaintiffs then moved to intervene in the California Derivative Action on May 6, 2016. On May 31, 2016, the judge in the California Derivative Action declined to preliminarily approve the proposed settlement and denied the Niedermayer Plaintiffs' motion to intervene, reminding the parties that the California Derivative Action had been dismissed for *forum non conveniens*. The parties to the California Derivative Action, including Taylor, filed motions to set aside the judgment dismissing that case, which the California court denied on August 17, 2016. Thereafter, Taylor filed a verified

stockholder derivative complaint in this Court.

On September 2, 2016, this Court granted the Niedermayer Plaintiffs' fully briefed motion to lift the stay in this case, and the Niedermayer Plaintiffs filed a second amended complaint on October 12, 2016. The second amended complaint adds new allegations based on the Section 220 documents and an additional claim for waste arising from the board's decision to pursue a futile settlement costing thousands of dollars in California.

On November 4, 2016, this Court consolidated the Niedermayer Plaintiffs' case with the Taylor case, and on November 9, 2016, Taylor and the Niedermayer Plaintiffs both moved to be appointed as the lead plaintiff. Both plaintiffs filed opposition briefs on November 23, 2016. This opinion resolves those motions.

## II. ANALYSIS

Taylor argues that the Niedermayer Plaintiffs lack standing to bring this case. Thus, this letter first addresses the issue of standing and then conducts a lead plaintiff analysis under *Hirt v. U.S. Timberland Service Co.*[5]

### A. Taylor's Standing Arguments Do Not Foreclose the Niedermayer Plaintiffs' Ability to Serve as Lead Plaintiffs

Taylor argues that because Niedermayer purchased CytRx shares after CytRx

---

[5]  2002 WL 1558342 (Del. Ch. July 3, 2002).

engaged Dream Team and after six of the thirteen Dream Team articles had been published, and because Reed purchased CytRx shares after nine of the Dream Team articles had been published, they lack standing to bring this case.[6] The Niedermayer Plaintiffs respond that they have standing under the continuing wrong doctrine, and even if the Court were to consider the Dream Team articles individually, the Niedermayer Plaintiffs have standing to challenge the majority of the wrongs alleged.

"Section 327 of the [Delaware General Corporation Law] requires a stockholder filing a derivative suit to allege that she held stock at the time of the transaction in question or that her shares thereafter devolved upon her by operation of law."[7] Thus, generally, a derivative plaintiff has standing to challenge a series of actions only if the plaintiff has held stock in the nominal defendant corporation throughout the alleged period of wrongdoing. This Court has been more flexible, however, in cases challenging a wrongful transaction that "continue[d] over a period of time."[8] In "unusual situations, such as where a plaintiff acquires his stock after a

---

[6]     Taylor's Opening Br. 18-20.

[7]     *Conrad v. Black*, 940 A.2d 28, 41 (Del. Ch. 2007).

[8]     *Id.*

particular transaction has begun but before it is completed," the plaintiff may have standing under the continuing wrong doctrine.[9]

The Niedermayer Plaintiffs potentially may have standing under the continuing wrong doctrine. But I need not and do not decide whether the continuing wrong doctrine applies because even if the Dream Team articles should be considered separately, Niedermayer purchased stock before seven of the thirteen Dream Team articles and has standing to challenge those seven. Taylor does not explain how the Niedermayer Plaintiffs would be entitled to recover fewer damages than Taylor on behalf of the corporation—even if they have standing to challenge only seven of the Dream Team articles. Thus, standing should not foreclose the Niedermayer Plaintiffs' ability to serve as lead plaintiffs under the facts of this case.

**B.    The Niedermayer Plaintiffs Are Appointed as Lead Plaintiffs**

The Court's analysis is guided by the multi-factor balancing test established in *Hirt v. U.S. Timberlands Service Co.*[10] The factors are:

- the "quality of the pleading that appears best able to represent the interests of the shareholder class and derivative plaintiffs;"

- the relative economic stakes of the competing litigants in the outcome of the

---

[9]    *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007).

[10]    2002 WL 1558342, at *2 (Del. Ch. July 3, 2002).

lawsuit (to be accorded "great weight");

- the willingness and ability of all the contestants to litigate vigorously on behalf of an entire class of shareholders;

- the absence of any conflict between larger, often institutional, stockholders and smaller stockholders;

- the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; and

- [the] competence of counsel and their access to the resources necessary to prosecute the claims at issue.[11]

This Court has recognized that a "nuanced and case-specific" analysis of the *Hirt* factors is necessary to reach the ultimate goal of "a leadership structure that will provide effective representation."[12] I address only the *Hirt* factors that tilt in one plaintiff's or the other's favor.[13]

---

[11] *Hirt*, 2002 WL 1558342, at *2 (citing *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1654504 (Del. Ch. Oct. 17, 2000)).

[12] *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 2016 WL 4257503, at *2 (Del. Ch. Aug. 12, 2016) (quoting *In re Del Monte Foods Co. S'holders Litig.*, 2010 WL 5550677, at *6 (Del. Ch. Dec. 31, 2010)) (internal quotation marks omitted).

[13] The competence of counsel, the absence of any conflict between larger and smaller stockholders, and the relative economic stakes of the plaintiffs do not weigh in favor of either party. All counsel are known to this Court as competent counsel in the area of stockholder derivative litigation. Niedermayer, Reed, and Taylor are all individual stockholders in CytRx. In its briefing, the Niedermayer Plaintiffs do not address either potential conflicts between larger and smaller stockholders or their relative economic stake in CytRx. And Taylor's brief uses these factors to rehash its standing argument.

### 1. Quality of the pleadings

In analyzing the quality of the pleadings, Delaware courts recognize a "public policy interest favoring the submission of thoughtful, well-researched complaints—rather than ones regurgitating the morning's financial press."[14] While I need not and do not decide whether either or both of Taylor and the Niedermayer Plaintiffs' complaints would survive a motion to dismiss, the Niedermayer Plaintiffs' second amended complaint is superior to Taylor's Delaware complaint. The Niedermayer Plaintiffs' complaint alleges facts obtained from its Section 220 demand that tie the illegal conduct described in the Pearson article to the entire board of directors. The Niedermayer Plaintiffs obtained board minutes that purportedly indicate that the board directed management to employ a new public relations strategy after a presentation from Kriegsman indicating that the campaign could help with future financing.[15] Further, the Niedermayer Plaintiffs obtained records that supposedly show that the audit committee was responsible for ensuring compliance with CytRx's disclosure policy but that there were gaps in the board's internal controls.[16]

---

[14]  *Inv'rs Bancorp*, 2016 WL 4257503, at *4 (quoting *Biondi v. Scrushy*, 820 A.2d 1148, 1162 (Del. Ch. 2003)).

[15]  Niedermayer Pls.' Opening Br. 21.

[16]  *Id.* at 22.

Finally, the Niedermayer Plaintiffs allegedly discovered through the Section 220 documents that Haen and Kriegsman attempted to conceal their involvement in the stock promotion scheme by communicating edits to the Dream Team articles through their assistants.[17] The Niedermayer Plaintiffs' complaint details all those facts.[18]

On the other hand, in Taylor's 42-page complaint filed in California, nearly three pages were copied and pasted from the CytRx website, and sixteen pages were copied and pasted from the Pearson report.[19] Any connection between the Dream Team scheme and CytRx management alleged in the California complaint came directly from the Pearson report. Although Taylor's Delaware complaint is better than his California complaint, it still extensively quotes the Pearson report.[20] Moreover, any improvements are attributable to Taylor's use of the Section 220 documents the Niedermayer Plaintiffs obtained. But "[t]o incent investment [in Section 220 proceedings], there generally needs to be some advantage gained by

---

[17] *Id.* at 22-23.

[18] Niedermayer Second Am. Compl. ¶¶ 44-81.

[19] Peter B. Andrews Aff. in Supp. of Niedermayer Pls.' Opening Br. Ex. C.

[20] *E.g.*, Compl. ¶ 26, *Taylor v. Kriegsman*, C.A. No. 12720-VCMR (Del. Ch. Sept. 6, 2016).

making the investment. In my view, Delaware law should take steps to favor stockholders who use Section 220 over those who do not."[21] Regardless, even with the benefit of the Section 220 documents, Taylor's complaint is inferior to the Niedermayer Plaintiffs' complaint.

### 2. Enthusiasm of litigation and willingness and ability to litigate vigorously on behalf of the entire class

These two factors weigh in favor of Andrews & Springer and the Niedermayer Plaintiffs. Niedermayer and Reed separately made Section 220 demands in order to obtain documents to establish a connection between the misconduct in this case and the CytRx board. Further, after this Court stayed this case in favor of the California Derivative Action, the Niedermayer Plaintiffs filed five briefs in the California court advocating for their right to litigate the merits of these claims in Delaware pursuant to the CytRx forum selection bylaw.[22]

Taylor asserts that he also litigated vigorously in California as evidenced by the 109 docket entries in that litigation.[23] But the efforts Taylor exerted in California

---

[21]  Denial of Stipulation and Proposed Order Staying Action, *Galustyan v. Sather*, C.A. No. 11676-VCL (Del. Ch. June 27, 2016).

[22]  Niedermayer Pls.' Opening Br. 30.

[23]  Taylor's Opening Br. 5. Regarding the Niedermayer Plaintiffs' willingness and ability to litigate on behalf of the entire class, Taylor primarily argues that the Niedermayer Plaintiffs do not have standing to bring derivative claims challenging

largely focused on avoiding a forum selection bylaw that chose Delaware as the exclusive jurisdiction for resolution of these claims, and involved no litigation on the merits.[24] Taylor argues that the Niedermayer Plaintiffs were dilatory in pursuing their Section 220 demand. While Niedermayer did delay in executing the confidentiality agreement and providing proof of stock ownership, Taylor made no Section 220 demand at all and attempted to settle the claims without the benefit of any discovery in the California Derivative Action. Taylor may have been enthusiastic, but his efforts in California did not vigorously pursue claims on the merits.[25]

\* \* \*

After balancing the *Hirt* factors, I find that the vigor of prosecution that Andrews & Springer and Gainey McKenna & Egleston have demonstrated thus far

---

the Dream Team articles from before Niedermayer purchased CytRx stock. For the reasons discussed above, that argument is not sufficient to disqualify the Niedermayer Plaintiffs as lead plaintiffs.

[24] Order re: Plaintiffs' Motion to Set Aside Judgment 7, *In re CytRx Corp. S'holder Deriv. Litig.*, No. 2:14-cv-06414-GHK (C.D. Cal. Aug. 17, 2016) ("The Parties overstate our familiarity with this case. Although we resolved a motion to dismiss in the CytRx securities action, which involves the same general factual allegations, we have not resolved a single motion on the merits in this case, which also concerns distinct claims that were not litigated in the securities action.").

[25] *See id.* ("If anything, we are skeptical of the Parties' motivation for attempting to settle here.").

and the resulting superior complaint they have filed qualify the Niedermayer Plaintiffs to serve as lead plaintiffs and Andrews & Springer and Gainey McKenna & Egleston to serve as co-lead counsel in this case.

## III.   CONCLUSION

For the reasons stated herein, the Niedermayer Plaintiffs' motion for appointment of lead plaintiff and lead co-counsel is granted, and Taylor's motion is denied.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*
Vice Chancellor

TMR/jp